UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID W. BROWN, | * |
| Plaintiff, | * |
| v. | * Civil Action No. 1:15-cv-01459 (CKK) |
| DEPARTMENT OF STATE, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S REPLY IN SUPPORT OF HIS CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT AND DISCOVERY**

Plaintiff David Brown ("Brown") brought this case against Defendant Department of State ("State") to obtain records under the Freedom of Information Act ("FOIA") about an unorthodox and unprecedented decision to allow private attorney David Kendall ("Kendall") to maintain classified records at the law office of Williams & Connolly.  (Compl., Dkt. #1, ¶¶ 6-9, 12 (filed Sept. 7, 2015).)  On 29 July 2016, State filed a Motion for Summary Judgment, and Brown filed a Cross-Motion for Partial Summary Judgment and Discovery on 9 September 2016, which State opposed on 21 October 2016.  For the reasons stated in his initial brief and herein, the Court should grant Brown's Cross-Motion.

Because the scope of this Cross-Motion is relatively narrow, Brown will address arguments raised by State in roughly the order in which they appear, but divided into two sections.  First, Brown will demonstrate why State has failed to refute his argument that the emails at issue in the Cross-Motion were not previously disclosed and therefore not covered by any exemption, and then he will briefly address the discovery issue.

**I.     PRIOR DISCLOSURE**

State's arguments against a finding of prior disclosure can be grouped into two major categories: 1) the disclosures were not sufficiently public to constitute waiver; and 2) the interests were too important to be waived.  Neither of these arguments is convincing, and the vast majority of the opinions cited in support of them does not actually stand for the propositions for which they are cited.

**A.     "Truly Public" Does Not Mean What State Says It Does**

State's first line of attack is to cite a litany of cases which it claims held that information must be widely disseminated to be "truly public."  The problem with this argument is that, with one exception, none of the cases cited defines "truly public" in the terms State uses the phrase.

The first case State cites for this argument is *Judicial Watch v. DOD*, 963 F. Supp. 2d 6 (D.D.C. 2013).  The first quote from this case used by State is instructive.  State correctly asserts that Judge Contreras defined being "released to the general public" as meaning that "the information 'has entered *and remains in* the public domain.'"  (Def.'s Reply Supp. Def.'s Mot. Summ. J. & Opp'n Pl.'s Cross-Mot. Part. Summ. J. & Disc., Dkt. #27, at 7 (filed Oct. 21, 2016) [hereinafter State's Opp'n] (quoting *id.* at 15-16).)  As an initial matter, State has given the Court no reason to believe that the private parties exchanging the emails in question have not continued to retain them, and so it naturally follows that if the Court finds that these emails *entered* the public domain by virtue of being sent to private parties, then it must find that they *remain* in the public domain unless State demonstrates otherwise.

Judge Contreras relied primarily on three cases to make this pronouncement and the next one quoted, "The logic of this doctrine is that 'where information requested is truly public, then enforcement of an exemption cannot fulfill its purposes.'"  *Id.* (quoting *Niagara Mohawk Power*

2

*Corp. v. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999)).  First, he relied on *Students Against Genocide v. Department of State* (*SAGE*), 257 F.3d 828 (D.C. Cir. 2001), which Brown addressed in his initial brief.  Simply put, *SAGE* provides the definition for "truly public" which is most applicable to this case, by contrasting it with information which was simply *shown* to members of the public and not *given* to them.  *Id.* at 236 ("In fact, the photographs were not 'released' at all.  Although Ambassador Albright displayed them to the delegates, she retained custody, and none left the U.N. chamber.  Hence, there is no 'permanent public record' of the photographs.") (quoting *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999)).  *This* is the definition used by this Circuit for "truly public," best understood as any physical record which has been allowed by the Government to remain in the hands of a non-governmental entity.  It is the same definition applied in *Muslim Advocates v. DOJ* to find that the fact that a small number of members of the public were allowed to review and make notes on records did not constitute public disclosure because they were not allowed to take the records from the building.  833 F. Supp. 2d 92, 100 (D.D.C. 2011).

In fact, *Muslim Advocates* presents the answer to State's contention that the fact that only a small number of private citizens—Kendall and other employees of Williams & Connolly—were allowed to see the emails means that they were not "truly public."  In that case, the Federal Bureau of Investigation only showed the information in question to a small number of representatives from civil rights and civil liberties groups, and yet the court's finding relied *solely* on the fact that those representatives were not allowed to keep copies of the records.  It is therefore *not* the number of people to whom a record is disclosed which decides this question, as State argues, but instead whether or not those people are allowed to keep a permanent copy of the record.

Judge Contreras also chiefly relied on *Niagara Mohawk*, the opinion which coined the term "truly public." The main problem with this citation is that *Niagara Mohawk* never actually defines this term, and the contextual meaning of it is very unclear. The opinion stated, "Niagara's position here is a little odd: if the information is publicly available, one wonders, why is it burning up counsel fees to obtain it under FOIA? But the logic of FOIA compels the result: if identical information is truly public, then enforcement of an exemption cannot fulfill its purposes." 169 F.3d at 19. No further mention of what "truly public" means is included in the opinion, as the remainder of the opinion is devoted to discussing whether or not the information is public *at all* (*see id.* at 19-20). It therefore appears that the Circuit was only concerned with the public vs. non-public distinction, such that if the requester could show that an agency record was disclosed outside the Government (in that case, to the New York Public Service Commission), then it was "truly public."

The final case upon which Judge Contreras relied is *Davis v. DOJ*, 968 F.2d 1276 (D.C. Cir. 1992), the opinion which coined the term "permanent public record" in this context. Again, the context of that case does not support State's position in this case. In that case, portions of confidential law enforcement records were entered into the record during a trial, and the plaintiff argued that this waived any exemptions over those records. *Id.* at 1279-1280. However, as the Circuit clearly stated *at the beginning* of its discussion of the matter, "This case appears to turn on the proper allocation of the burden of proof or the burden of production." *Id.* at 1279. The Circuit never addressed whether or not the information was disclosed; its entire discussion focused on whether the plaintiff *had proven that it was disclosed*. There was no discussion of the numbers of people in the room when it was disclosed, or whether they were allowed to keep copies; it was *solely* about the burden of proof. Brown does not disagree with this opinion in the

slightest, because it supports *his* position.  He has clearly proven that these emails were released to individuals[1] outside the Government and that they likely remain in the custody of those individuals, and according to *Davis*, that satisfies his burden.

It is important, however, to address the fact that even though the cases on which Judge Contreras relied do not stand for the propositions for which State cites them, Judge Contreras himself found that information disclosed to the filmmakers was not "publicly disclosed." *Judicial Watch*, 963 F. Supp. 2d at 15-16.  However, this opinion is consistent with Brown's argument.  The important distinction between the two cases is that, in *Judicial Watch*, *information* was *told* to outside parties, while in this case, *records* were *given* to outside parties.  This distinction places *Judicial Watch* in the same category as *SAGE* and *Muslim Advocates*, in which outside parties were given *access* to information without the ability to *prove* its authenticity.  If any of the outside parties in either of these cases were to try and make claims regarding what that information was, the only evidence they would have for their claims would be *their word*, whereas an outside party who possesses *a physical document* has *proof.*  This same logic explains why a release of a document through FOIA to *a single requester* constitutes a waiver for all other requesters.  *Memphis Publishing Co. v. FBI*, 879 F. Supp. 2d 1, 11 (D.D.C. 2012) (accidental release of confidential informant information to FOIA requester waives ability to invoke FOIA exclusion).  It does not matter whether or not the individual in possession of the document has disseminated it further; it only matters whether or not he *can*.  Viewed through this lens, it is clear that the information contained in these emails have been publicly disclosed

---

[1] State curiously states that it "provided information to *a single, outside party: David Kendall and his law firm*."  (State's Opp'n at 7 (emphasis added).)  Williams & Connolly is a 290-lawyer firm, presumably with significantly more support staff.  Firm, *at* https://www.wc.com/Firm (last accessed Dec. 2, 2016).  It is quite a stretch to consider this firm "a single, outside party," even if only a small number of its employees actually reviewed the emails in question.

because Kendall or any member of Williams & Connolly *could* publicly release them at any time, and State would have no ability to stop them because it placed no restrictions on their dissemination.

### B. The Prior Disclosure Doctrine Applies To All Exemptions

State next argues that the information in question cannot be subject to the waiver doctrine, which is so unsupported by case law that it is surprising the argument is even being made. The Circuit stated unambiguously that "when information has been officially acknowledged, its disclosure may be compelled even over an agency's otherwise valid exemption claim." *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (internal quotations omitted). It did not add "except for Exemptions (b)(3), (b)(6), and (b)(7)."

State first attempts to show that the waiver doctrine does not apply to Exemption (b)(7) by citing to a single case in which the Circuit held that secret testimony by a confidential informant at trial did not waive the Government's ability to withhold information about him under Exemption (b)(7)(D). *Parker v. DOJ*, 934 F.2d 375, 379-81 (D.C. Cir. 1991). That was the extent of the Circuit's ruling. The Circuit notably did *not* say that prior disclosure of information could not be used to demonstrate waiver of information withheld under Exemption (b)(7). In fact, the Circuit held exactly the opposite in the seminal *Davis* case, which was *only* about information withheld under Exemptions (b)(7)(C) and (b)(7)(D). State has not argued that Kendall or any employee of Williams & Connolly are confidential informants, nor has it invoked Exemption (b)(7)(D), so this case is entirely misplaced.

State then attempts to argue that privacy interests withheld under Exemption (b)(6) cannot be waived by prior disclosure by the Government. This argument is equally meritless. The two cases cited by State held that *a requester* could not waive a third party's privacy

interests (*Milton v. DOJ*, 783 F. Supp. 55, 59 (D.D.C. 2011)) and that privacy interests cannot be waived by third parties in general (*Petrucelli v. DOJ*, 153 F. Supp. 3d 355, 362 (D.D.C. 2016)). Neither case dealt with a prior official disclosure by the agency of information which would otherwise be protected by Exemption (b)(6), which is a doctrine which prevents the use of *any* exemptions. Simply put, Brown showed that *no* exemptions could be invoked because of prior official disclosure, and State argued that he had not shown that the private parties had waived their privacy interests as defined by Exemption (b)(6) jurisprudence, which does not apply because *no exemptions can be claimed if there has been prior official disclosure.*[2]

**II.     DISCOVERY**

Brown will only briefly address two statements made by State regarding the discovery issue, as he maintains that he has fully and adequately argued the point and that repetition would be redundant. First, he takes issue with State's claim that he "suggest[s] that *every* State employee must search *every* records system using *every* search term used in the entirety of State's search." (State's Opp'n at 2 (citing Pl.'s Mem. P. & A. Opp'n Def.'s Mot. Summ. J. & Supp. Pl.'s Cross-Mot. Part. Summ. J. & Disc., Dkt. #24, at 8-9 (filed Sept. 9, 2016) [hereinafter Brown's Mem.]).) This could not be further from the truth. Brown made two specific arguments. First, he argued that State had provided such inconsistent information about its searches that the Court could not find that the search was adequate, and that discovery was necessary to fill in the gaps. (Brown's Mem. at 8.) Instead of addressing this valid concern, State instead seizes on the fact that he said that State has not demonstrated that it searched "*all*

---

[2] However, Brown will remove Cheryl Mills' personal email address (State's Opp'n at 8 n.4) from the scope of this challenge, as he frankly has no use for that information and it really does not pertain to government activities. However, the information about agency officials engaged in the process remain of definite interest and clearly pertain to government activities, namely, who in the Government did what when, how, and why.

records systems" (*id.*) (emphasis in original)) without bothering to mention that he actually said that State needs to show that it searched all records systems *"which are reasonably likely to contain records"* (*id*. (emphasis added)). Brown remains comfortable asserting that the burden of proof lies with State to show that it searched all records systems which are reasonably likely to contain records, but he sincerely doubts that "*every* records system" (State's Opp'n at 2) meets that definition.

Second, he argued that "the twelve searches of specific employees' records" (Brown's Mem. at 8) needed to utilize every search term. If there was any ambiguity in this initial statement, he clarified it when he stated that "the *remaining* searches" (*id.* at 9 (emphasis added)) must be judged against the standard of the one search which he conceded was almost completely perfect. In this context, "the remaining searches" clearly refers to the *eleven* remaining searches of *eleven* employees' records, not searches of "*every* State employee" (State's Opp'n at 2 (emphasis in original). It is thus through blatant hyperbole how State attempts to distract the Court from the fact that its evidence is scattershot and inconsistent and that discovery is warranted to resolve the problems.

On that final note, State does raise a point in passing at the end of its brief which warrants attention. State briefly cites *Wolf v. CIA*, 569 F. Supp. 2d 1 (D.D.C. 2008), with a parenthetical stating that "even when an agency's declarations are insufficient, courts 'generally will request that an agency supplement its supporting declarations rather than order discovery.'" (State's Opp'n (citing *id.* at 10).) This is a true statement, but not really applicable to this case. If State had wished to supplement its supporting declaration, it could have done so with the filing of its opposition brief. It chooses not to, and instead shows a complete lack of understanding of the problems Brown actually has with its search. An order instructing it to supplement this

8

declaration without any input from Brown to ensure that the appropriate information is included would likely be an exercise in futility, and Brown cannot provide any input without more information, which would require *discovery*.  The order State is requesting instead of discovery would only delay the resolution of this matter further, require more rulings from this Court, and ensure that the information Brown seeks becomes even *staler* and less useful.  However, with that being said, Brown will inform this Court that if it does *not* order discovery, then it should at the very least issue the order State implicitly requests in this citation instead of finding State's declaration to be adequate.

## CONCLUSION

For the foregoing reasons, the Court should grant Brown's Cross-Motion for Partial Summary Judgment and Discovery.

Date:   December 2, 2016

                                              Respectfully submitted,

                                              /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*